OPINION OF THE COURT
William J. Giacomo, J.
Factual and Procedural Background
Plaintiff commenced this action against, inter alia, defendants Aubrey Smith, Brian Smith, and the City of Yonkers, to foreclose on tax lien 143026 in the amount of $9,008.98, dated May 14, 2003, and tax lien 144301 in the amount of $11,923.29, dated May 12, 2004, against the premises located at 46 Dell-wood Avenue, Yonkers, New York. Plaintiff had purchased the tax liens and took an assignment of the liens on August 18, 2011.
The Smiths purchased the premises on August 28, 2014, for $945,000. Prior to closing, they obtained a title report from Westchester Land Services, LLC which is the agent for the title underwriter Westcor Land Title Insurance Company. Alfredo Reis-Leite, on behalf of Westcor, conducted a search of Yonkers’ tax records for open tax liens against the property prior to the closing. Mr. Reis-Leite’s search of the Yonkers tax records did not disclose any open or unpaid tax liens against the premises. The search revealed that the defendant City of Yonkers had marked all prior tax liens against the property as satisfied.
Motion Sequence No. 2
The Smiths move for summary judgment dismissing the complaint and cancelling the notice of pendency filed against the premises by plaintiff on May 13, 2015. The Smiths argue that it is undisputed that at the time they purchased the property, the two tax liens were marked by the City of Yonkers on its tax records as satisfied. The Smiths attest that at the time they purchased the property, on August 28, 2014, they had no knowledge that the subject tax liens were outstanding obligations or liens against the property.
*1003 The Smiths submit an affidavit from John Manning, principal of Westchester Land Services, the title company that issued the title report for their purchase of the property, as well as a copy of the report. At the time of the purchase, the Smiths did not have notice of any open tax liens. The title report indicates that the only open tax liens were 2014/2015 school tax liens. The title search did not reveal any other open tax liens on the premises. Thus, the Smiths argue that they are bona fide purchasers for value and plaintiff is estopped from enforcing the liens by foreclosure against their fee interest.
In further support of their motion, the Smiths submit an affidavit of Alfredo Reis-Leite, who performed the title search of the premises prior to their purchase. Mr. Reis-Leite attests that on August 3, 2014, he conducted a tax search of the City of Yonkers’ tax records to determine whether there were any open tax liens against the premises. His search included going to the City of Yonkers Tax Department, finding the subject parcel in the index and locating the records in the City’s books. The only open liens revealed by the City’s books were the 2014/ 2015 school tax liens. Mr. Reis-Leite attests that his search revealed that tax liens 143026 and 144301 were marked satisfied by the City of Yonkers.
The Smiths submit the deposition testimony of Anthony Cellamare, the supervisor of tax records for the City of Yonkers between 2011 and 2015. Mr. Cellamare testified that he ran the lien sale every year for the City of Yonkers. He explained that during the time in question, if a lien was paid, it would be marked by a city employee in a particular volume of the tax books maintained by the City. Mr. Cellamare further explained that when title companies would come to the City to perform a tax search they would go through the books to determine whether there was a lien on the property and whether it was open or paid. Mr. Cellamare testified that if a title searcher wanted to see a paper copy of the actual lien, the City of Yonkers would show them the lien if asked but that was not something the City regularly provided.
Mr. Cellamare testified that both tax liens in question were mistakenly marked satisfied and cancelled in the official tax books by City of Yonkers employee Renee Milligan on August 10, 2011. He stated that the records should have reflected that the liens were assigned to plaintiff. Thereafter, on September 18, 2014, after the Smiths purchased the property, the City of Yonkers corrected their records to indicate that the liens were assigned and were not in fact satisfied.
*1004 Renee Milligan of the Yonkers Tax Department testified that she was responsible for marking the City’s lien books to indicate whether a lien had been satisfied. She testified that she would mark the lien as satisfied with a stamp and initial and date it. Ms. Milligan testified that whatever is on the paper copy of the actual lien is recorded in the official books kept by the City.
Ms. Milligan testified that on August 10, 2011, she marked tax lien 143026 in the amount of $9,008.98 as “presented as satisfied and surrendered to the City of Yonkers for cancellation.” She further testified that on August 10, 2011, she marked tax lien 144301 as “presented as satisfied and surrendered to the City of Yonkers for cancellation.” Ms. Milligan placed her initials next to the markings.
Plaintiff does not submit any opposition to the Smiths’ motion for summary judgment dismissing the complaint. Plaintiff argues that due to the negligence of the City of Yonkers, the Smiths purchased a property for value without any notice of the unsatisfied lien owned by plaintiff.
In opposition to the Smiths’ motion, the City of Yonkers does not challenge the argument that the tax records erroneously reflected that the liens were satisfied. Rather, the City of Yonkers argues that a question of fact exists as to whether the title company conducted a proper and thorough search of the City’s tax records. The City states that the title company examined the City’s records but never asked to examine the actual paper copy of the tax lien. Moreover, the City argues that it is immune from liability.
Motion Sequence No. 3
Plaintiff moves for leave to file a late motion for summary judgment and upon leave, seeks an order granting summary judgment against the City of Yonkers.
Plaintiff submits the affidavit of Robert J. Flower, its principal, who attests that on August 18, 2011, plaintiff purchased the liens for the amounts stated and took an assignment. Plaintiff attaches copies of the City of Yonkers Transfer of Tax Liens for liens 143026 and 144301. However, the City of Yonkers mistakenly marked the tax liens as “satisfied” and “cancelled” in their records and the records should have reflected that the liens were assigned to plaintiff. As a result of the City of Yonkers’ error, the two liens are unenforceable and useless and plaintiff asserts that it has been damaged in the *1005 amount of the liens plus interest. Plaintiff also relies upon the deposition testimony of Mr. Cellamare in support of its motion.
In opposition, the City of Yonkers argues that plaintiff failed to comply with the Charter of the City of Yonkers and file or record the two assignments of the tax lien with the Westchester County Clerk. In any event, the City argues it is immune from liability for the governmental acts of its employees.
In reply, plaintiff points out that section C19-6 of the Charter of the City of Yonkers merely states that a transfer of tax lien and any assignment thereof may be recorded with the County Clerk; there is no requirement that it must be recorded. Plaintiff further argues that the City cannot be immune from liability for its own negligence.
Discussion
A party seeking summary judgment has the burden of tendering evidentiary proof in admissible form to demonstrate the absence of material issues of fact (see Alvarez v Prospect Hosp., 68 NY2d 320, 324 [1986]). Where the moving party establishes prima facie entitlement to judgment as a matter of law, the burden then shifts to the opposing party to demonstrate that genuine issues of fact exist to preclude summary judgment (see Zuckerman v City of New York, 49 NY2d 557, 562-563 [1980]).
In Gletzer v Harris (12 NY3d 468, 477 [2009]), under somewhat different circumstances, the Court of Appeals was asked to determine the effective date of a renewal lien secured pursuant to CPLR 5014 and noted that potential purchasers must be able to rely on a docketing system for encumbrances upon real property. The Court held,
“We thus conclude that those seeking to secure any interest in real property must be able to rely upon a public record to furnish full and complete information of any conveyances, liens or encumbrances affecting such property. They should not be penalized for failing to unearth an expired lien or not investigating the prospect that it might be subject to a pending renewal request.” (Gletzer v Harris, 12 NY3d 468, 477 [2009].)
Here, it is undisputed that the City of Yonkers official tax records, which were made accessible to the public for the very purpose of searching for tax liens, indicated that the two liens in question were cancelled and satisfied at the time of the *1006 Smiths’ purchase. The Smith defendants relied upon the City of Yonkers’ tax records. It was only after their purchase that the City realized its mistake and made the correction to the record book. The Smith defendants have demonstrated that they are bona fide purchasers and are entitled to a cancellation of the tax liens and an estoppel of enforcement of the liens (see TCJS Corp. v Koff, 74 AD3d 1188 [2d Dept 2010]).
Plaintiff moves for leave to file a late motion for summary judgment. Plaintiff failed to demonstrate good cause for its delay in moving for summary judgment (see Brill v City of New York, 2 NY3d 648 [2004]). However, a court, in deciding a timely motion, may search the record and award summary judgment to a nonmoving party (see CPLR 3212 [b]; Wernicki v Knipper, 119 AD3d 775 [2d Dept 2014]). In light of the above determination that the Smiths are bona fide purchasers and the liens are cancelled, plaintiff is entitled to summary judgment against the City of Yonkers as no issues of fact exist.
“When a cause of action alleging negligence is asserted against a municipality, and the municipality is exercising a governmental function, the plaintiff must first demonstrate that the municipality owed a special duty to the injured person” (Graham v City of New York, 136 AD3d 747, 748 [2d Dept 2016]; see Valdez v City of New York, 18 NY3d 69, 75 [2011]). “Government action, if discretionary, may not be a basis for liability, while ministerial actions may be, but only if they violate a special duty owed to the plaintiff, apart from any duty to the public in general” (McLean v City of New York, 12 NY3d 194, 203 [2009]). To establish a special duty, plaintiffs are required to show:
“(1) an assumption by the municipality, through promises or actions, of an affirmative duty to act on behalf of the party who was injured; (2) knowledge on the part of the municipality’s agents that inaction could lead to harm; (3) some form of direct contact between the municipality’s agents and the injured party; and (4) that party’s justifiable reliance on the municipality’s affirmative undertaking” (Valdez v City of New York, 18 NY3d 69, 80 [2011], quoting Cuffy v City of New York, 69 NY2d 255, 260 [1987]).
Here, plaintiff demonstrated the existence of a special relationship with the City of Yonkers. By selling the tax liens in question that were assigned to plaintiff, the City of Yonkers *1007 had a form of direct contact with plaintiff and knowledge that selling an invalid tax lien could lead to harm. Moreover, plaintiff justifiably relied on the City’s affirmative undertaking of selling what should have been valid and enforceable tax liens. Inasmuch as the tax liens are cancelled and not enforceable against the Smiths, who are bona fide purchasers, the City of Yonkers is not entitled to a windfall due to its own error in marking the tax liens as satisfied and cancelled.
Accordingly, the motion of the defendants Aubrey Smith and Brian Smith for summary judgment dismissing plaintiff’s complaint is granted (motion sequence No. 2) and the complaint is dismissed insofar as asserted against them; and the plaintiff’s motion for summary judgment against the defendant City of Yonkers is granted (motion sequence No. 3) on the law and in an exercise of discretion.