NORMAN D. GROH, Respondent, v EDWARD J. HALLORAN et al., Defendants, and DOLLAR SAVINGS BANK, Appellant.

First Department, April 6, 1982

APPEARANCES OF COUNSEL

*Robert S. Stitt* of counsel (*John M. Woods* with him on the brief; *Thacher, Proffitt & Wood,* attorneys), for appellant.

*Alan J. Firestone* of counsel (*Firestone, Marcovitz & Harris,* attorneys), for respondent.

OPINION OF THE COURT

MURPHY, P. J.

Defendant Dollar Savings Bank, through its subsidiary, June Holding Corp., sold the Shelton Towers Hotel to Shelton Towers Associates (STA) on April 5, 1977. In return, STA (i) assumed responsibility for Dollar's pre-existing first mortgage in the sum of approximately $10,000,000, (ii) executed another mortgage for

$10,000,000 for a reconstruction loan provided by Dollar, and (iii) paid June the sum of $1,000,000 for the deed to the property. On May 31, June 1, and June 2, 1978, a second closing was held at which the reconstruction loan was increased by $8,000,000.

STA is a limited partnership; Halloran Properties, Inc., and Coford, Inc., are its general partners and Edward J. Halloran is its limited partner. Plaintiff Groh is an experienced developer in the hotel/motel industry. He has, *inter alia,* developed more than 30 Holiday Inns throughout the East. In this proceeding, plaintiff alleges that he was a joint venturer with STA and Edward Halloran in the development of Shelton Towers Hotel, later renamed the Halloran House Hotel (the Hotel). Plaintiff alleges that STA and Halloran have failed to recognize his ownership interest in the Hotel and have not accounted to him for the profits since November, 1978. Therefore, Groh seeks, in the first cause of action, to impose a constructive trust upon the Hotel.

In the third cause, plaintiff avers that, at the two closings, Dollar had actual knowledge of his ownership interest in the Hotel. Under RPAPL article 15, he seeks a discharge of Dollar's mortgages insofar as they affect his ownership interest.

Thomas F. Hunt, a senior vice-president of Dollar, submitted an affidavit in support of the branch of the motion for summary judgment dismissing the third cause of action. To the extent here relevant, Hunt's affidavit states: "Prior to the closing, Dollar was advised by Emil V. Cianciulli, of Messrs. Meyer, English & Cianciulli, attorney for the purchaser STA, that Mr. Groh would not appear on the list of limited partners of STA but would become a partner at some later date after the closing". Hunt also stressed that Groh (i) participated in the negotiations during which it was agreed that title would be taken in STA, (ii) was present at both closings, and (iii) did not object at either closing when title was transferred to STA.

In a carefully worded affidavit, Groh maintained that Dollar was, at all times, aware of his ownership interest in the Halloran House project. In the course of his affidavit, Groh claimed that he was misled at the closings:

"7. At no time did Dollar ever inquire of *me* just what my position was, apparently feeling that the word of an attorney for a party which is now a defendant in this action was sufficient.

"8. At no time did I ever contemplate the total removal of my name from the list of principals of the Halloran House in such a way as to forever bar me from asserting any legitimate claim to an ownership interest therein.

"9. Dollar admits that it was aware that I was a principal, and yet Dollar also admits that [*sic*] went ahead with this transaction in such a manner as to exclude me based solely on the word of others and without ever consulting me.

"10. While it is true that I attended certain sessions at which this transaction was negotiated and that I attended one of the meetings at which the closing took place, I am not an attorney, and it was always my impression, fostered in part by Dollar, STA and Halloran, that my position was secure and well known to all parties.

"11. It was never my intention that this transaction take place in the manner described by Dollar so as to exclude me from my rightful ownership interest in the Halloran House.

"12. When I attended the meetings described by Mr. Hunt in his affidavit, I was never fully aware of the fact that the deal had been structured in such a way that I, on paper, had no interest in the property".

Upon Dollar's motion for summary judgment, the evidence must be viewed most favorably to the plaintiff. In that light, the proof indicates that, at each closing, Dollar knew that plaintiff had an interest in the Hotel but it did not place the plaintiff's name on any of the instruments involved in the closing. However, Dollar's reason for not doing so is clear from the record. Although the plaintiff tries to create the impression in his affidavit that he was a naive layman defrauded at both closings, the evidence shows that he was a sophisticated developer well aware of the events transpiring at each closing. He did not voice any objection to the proceedings at either closing because Dollar was doing that which the plaintiff requested during

negotiations, i.e., it was deeding the property to STA. This fact is evident from paragraph 18 of the complaint which reads as follows: "18. That plaintiff and defendant EDWARD J. HALLORAN further agreed that record title to the project described in paragraph 16 would be taken in the name of EDWARD J. HALLORAN or an entity owned and/or controlled by him with plaintiff's interest being preserved by his trust in EDWARD J. HALLORAN".

It is also evident from paragraphs 21 and 22 of the complaint that difficulties only arose between the plaintiff and the Halloran interests after the second closing:

"21. That defendant EDWARD J. HALLORAN has refused to acknowledge the interest of plaintiff as co-owner of the project described in paragraph 16 as well as the business of operating the hotel contained therein and has refused to permit plaintiff to exercise any right of ownership to said project or the real property which is part thereof.

"22. That defendants EDWARD J. HALLORAN and SHELTON TOWERS ASSOCIATES have been collecting the rents, issues and profits from the aforesaid project and real property since November, 1978 and have retained same for their own use and have failed to pay to plaintiff or to account therefor".

The third cause of action is a spurious attempt to entangle Dollar in a subsequent dispute arising from the private contractual arrangements allegedly made between the plaintiff and the Halloran interests. This shallow attempt should not succeed. Since plaintiff actively encouraged Dollar to place title to the Hotel in STA, he is now estopped from claiming that Dollar acted improperly in that matter. (21 NY Jur, Estoppel, §§ 34, 48).

Furthermore, the plaintiff seeks under the first cause of action to impose a constructive trust upon the interests of Halloran and STA in the Hotel. The interests of Halloran and STA in the Hotel are clearly subject to Dollar's mortgages. Therefore, even if the plaintiff should succeed in imposing a constructive trust under the first cause, that trust would necessarily be subject to Dollar's mortgages. The imposition of the constructive trust would not give the plaintiff any greater rights than those possessed by Halloran and STA vis-à-vis Dollar.

Moreover, plaintiff has failed to show that any of the four criteria for imposing a constructive trust are present and operative against Dollar upon the evidence present in this case. (*Sharp v Kosmalski,* 40 NY2d 119, 121.) Simply stated, Dollar was not unjustly enriched; it gave value for the mortgages it now holds. While plaintiff may ultimately be able to impose a constructive trust against STA and the Halloran interests, it has no viable cause of action against Dollar upon that theory.

Accordingly, the order of the Supreme Court, New York County (SINCLAIR, J.), entered October 20, 1981, granting reargument but adhering to the prior order, entered May 7, 1981, denying Dollar's motion for summary judgment, should be reversed, on the law, and the branch of Dollar's motion for summary judgment dismissing the third cause of action should be granted, with costs.

KUPFERMAN, CARRO, MARKEWICH and FEIN, JJ., concur.

Order, Supreme Court, New York County, entered on October 20, 1981, unanimously reversed, on the law, and the branch of Dollar's motion for summary judgment dismissing the third cause of action granted. Appellant shall recover of respondent $75 costs and disbursements of this appeal.