Maranino v Cabrini of Westchester (2024 NY Slip Op 51040(U))

[*1]

Maranino v Cabrini of Westchester

2024 NY Slip Op 51040(U)

Decided on August 13, 2024

Supreme Court, Westchester County

Lefkowitz, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on August 13, 2024
Supreme Court, Westchester County

Lynda Maranino, as Administrator of the Estate of Vilma Troise, 
 a/k/a Vilma Marie Troise, Plaintiff,

against
Cabrini of Westchester d/b/a St. Cabrini Nursing Home, 
 ABC Corporation, and ABC Partnership, Defendants.

Index No. 58740/2022

Napoli Shkolnik, PLLC
Attorneys for Plaintiff 
400 Broadhollow Rd., Suite 305
Melville, New York 11747
Wilson Elser Moskowitz Edelman & Dicker LLP
Attorneys for Defendant
Cabrini of Westchester d/b/a St. Cabrini Nursing Home 
200 Great Oaks Blvd., Suite 228
Albany, New York 12203

Joan B. Lefkowitz, J.

The following electronically filed papers (NYSCEF Doc. Nos. 23-69; 72-99; and 101-109) were read on the motion by defendant Cabrini of Westchester d/b/a St. Cabrini Nursing Home ("defendant") for an order, pursuant to CPLR 3211(a)(1), (2) and/or (7), dismissing the Amended Complaint:
Motion Sequence No. 1
(1) Notice of Motion; Affirmation in Support and Exhibits A-RR; and Memorandum of Law in Support;
(2) Affirmation in Opposition and Exhibits 1-26; and Memorandum of Law in Opposition; 
(3) Affirmation in Reply and Exhibits RR-SS; and Memorandum of Law in Reply;
(4) Plaintiff's Supplemental Letter Submission and Exhibits 1-3; and
(5) Defendant's Supplemental Letter Submission.
Upon reading the foregoing papers, the motion is determined as follows:
Plaintiff Lynda Maranino ("plaintiff") commenced this action in her capacity as administratrix of the estate of her mother, Vilma Troise a/k/a Vilma Marie Troise (the "decedent"), in connection with allegations that, inter alia, the defendant nursing home's negligence in response to the COVID-19 pandemic resulted in the decedent's passing.
Specifically, in the Amended Complaint, plaintiff named defendant as well as additional defendants "ABC Corporation" and "ABC Partnership" as fictitious entities with ownership interests in defendant's nursing home, to the extent that any such entities exist (see NYSCEF Doc. No. 3). In relevant part, plaintiff alleges that the decedent was a resident of defendant's nursing home in Dobbs Ferry from January 1, 2017 until April 4, 2020. She further alleges that the decedent contracted COVID-19 during her residency, and that on April 4, 2020 she was transferred to White Plains Hospital for treatment. Plaintiff alleges that on April 5, 2020, the decedent died at White Plains Hospital from complications arising from COVID-19. Plaintiff in the Amended Complaint alleges that her claims arise from two different time periods, i.e., prior to the COVID-19 pandemic when defendant was negligent and/or committed nursing home malpractice in connection with its care of the decedent between 2017 and early 2020, and after the pandemic began in March 2020 when defendant's response thereto was negligent and/or grossly negligent and led to the decedent's wrongful death.
Based upon the foregoing general allegations as detailed in the Amended Complaint, plaintiff asserts: (1) a first cause of action for violation of NY Pub. Health Law §§ 2801-d and 2803-c; (2) a second cause of action for negligence prior to the COVID-19 pandemic; (3) a third cause of action for negligence during and following the COVID-19 pandemic; (4) a fourth cause of action for negligence per se; (5) a fifth cause of action for conscious pain and suffering; (6) a sixth cause of action for wrongful death; (7) a seventh cause of action for gross negligence; and (8) an eighth cause of action for nursing home malpractice resulting in wrongful death (see NYSCEF Doc. No. 3 at ¶¶ 190-301).
On June 8, 2022, defendant filed a Notice of Removal by which it removed this action to the United States District Court for the Southern District of New York (see NYSCEF Doc. Nos. 8-15). However, on May 23, 2023, the federal court remanded the action back to this Court (see NYSCEF Doc. No. 18).
Defendant subsequently made the instant motion (Seq. No. 1) for an order, pursuant to CPLR 3211(a)(1), (2) and/or (7), dismissing the Amended Complaint in its entirety (see NYSCEF Doc. Nos. 23-69). Plaintiff opposes the motion (see NYSCEF Doc. Nos. 72-99).
In support of its motion, defendant tenders: (1) an affirmation from Bonita Burke ("Burke"), which is based upon Burke's personal knowledge as defendant's Administrator since 2013, in which Burke avers as to, inter alia, defendant's good faith furnishing of services to the decedent and defendant's good faith reliance upon the government's guidance regarding the COVID-19 pandemic; (2) a memorandum of law; and (3) an affirmation from defendant's counsel in which he annexes thereto copies of the pleadings and documentary evidence in support of defendant's motion (see NYSCEF Doc. Nos. 23-69).
Based upon the foregoing submissions, defendant argues that the first, second, third, fifth, sixth, seventh and eighth causes of action should be dismissed pursuant to the New York Emergency or Disaster Treatment Protection Act, NY Public Health Law Article 30-D, §§ 3080-3082 (the "EDTPA"), which provides civil immunity for claims relating to healthcare services rendered in response to the COVID-19 pandemic. Specifically, defendant contends that each of these seven claims is subject to dismissal under the EDTPA, as: (1) defendant provided the [*2]decedent with health care services pursuant to applicable law or a COVID-19 emergency rule; (2) defendant's treatment and care of the decedent were impacted by its response to the COVID-19 pandemic; and (3) defendant established through Burke's affirmation that it provided health care services to the decedent in good faith. Defendant further asserts that the EDTPA's repeal on August 6, 2021 was not given retroactive effect, such that the EDTPA provides defendant civil immunity for its treatment of the decedent, who passed away on April 5, 2020. Defendant also argues that the seventh cause of action for gross negligence is subject to dismissal under the EDTPA notwithstanding the statute's general exception for "gross negligence," as the Amended Complaint fails to allege sufficient facts to support any finding of intentional, willful, or grossly negligent conduct. Defendant alternatively contends that the first, second, third, fifth, sixth, seventh and eighth causes of action should be dismissed under the Federal Public Readiness and Emergency Preparedness Act, 42 U.S.C. §§ 247d-6d, 247d-6e (the "PREP Act"), which provides broad immunity "from suit" against any claim "relating to" a defendant's use or administration of "covered countermeasures," including PPE, COVID-19 tests, and medical devices used in the diagnosis or treatment of COVID-19. Defendant also asserts that the fourth cause of action for negligence per se should be dismissed pursuant to CPLR 3211(a)(7) on the ground that plaintiff has failed to state a claim upon which relief may be granted. As such, defendant concludes that the Amended Complaint should be dismissed in its entirety pursuant to CPLR 3211(a)(1), (2) and/or (7).
In opposition, plaintiff furnishes: (1) a memorandum of law; and (2) an affirmation from plaintiff's counsel in which he annexes thereto copies of documentary evidence in opposition to defendant's motion (see NYSCEF Doc. Nos. 72-99).
Plaintiff contends in her opposition that defendant's motion should be denied in its entirety on the ground that defendant is not entitled to the immunity granted by the EDTPA. In particular, plaintiff argues that the EDTPA was repealed such that it no longer shields defendant from liability in connection with healthcare services rendered in connection with the COVID-19 pandemic. Plaintiff alternatively asserts that even if the EDTPA's repeal was not given retroactive effect, defendant has failed to conclusively establish a defense under the statute, and that Burke's affirmation is insufficient for these purposes. Plaintiff also contends that the materials furnished by defendant are more appropriate for a CPLR 3212 summary judgment motion, and should not be considered in the context of a CPLR 3211 motion to dismiss. Plaintiff further argues that the seventh cause of action for gross negligence should not be dismissed, as the EDTPA expressly provides that claims arising from "gross negligence" are not subject to dismissal under the statute. Plaintiff also asserts that irrespective of the EDTPA, defendant's conduct violated federal law. Plaintiff further contends that the PREP Act is inapplicable to this case, which includes allegations separate and apart from the time period of the COVID-19 pandemic and the "covered countermeasures" that are encompassed by the PREP Act. As such, plaintiff concludes that defendant's CPLR 3211 motion should be denied.[FN1]

In reply, defendant tenders: (1) an attorney affirmation in reply; and (2) a reply memorandum of law (see NYSCEF Doc. Nos. 101-109). Defendant argues therein that a CPLR 3211 motion to dismiss is indeed the appropriate legal vehicle by which to invoke EDTPA [*3]immunity, and that plaintiff misconstrues defendant's submissions in attempting to falsely re-frame them as being designed for CPLR 3212 relief. Defendant further contends that alternatively, as set forth in its moving papers, the first, second, third, fifth, sixth, seventh and eighth causes of action are subject to dismissal under the PREP Act. Defendant also asserts that the fourth cause of action for negligence per se should be dismissed pursuant to CPLR 3211(a)(7), as plaintiff failed to state a claim and she abandoned this claim by wholly neglecting to address it in plaintiff's opposition papers. As such, defendant reiterates that the Amended Complaint should be dismissed in its entirety pursuant to CPLR 3211(a)(1), (2) and/or (7).
To succeed on a motion to dismiss pursuant to CPLR 3211(a)(1) on the ground that a defense is founded on documentary evidence, the documentary evidence that forms the basis of the defense must be such that it resolves all factual issues as a matter of law, and conclusively disposes of the plaintiff's claim (AG Capital Funding Partners, L.P. v State St. Bank & Trust Co., 5 NY3d 582 [2005]; 511 W. 232nd Owners Corp. v Jennifer Realty Co., 98 NY2d 144 [2002]; Held v Kaufman, 91 NY2d 425 [1998]; Leon v Martinez, 84 NY2d 83 [1994]; Fontanetta v Doe, 73 AD3d 78 [2d Dept 2010]). To qualify as "documentary," the evidence relied upon must be unambiguous and undeniable, such as judicial records and documents reflecting out-of-court transactions such as mortgages, deeds, and contracts. Letters, affidavits, notes, and deposition transcripts are generally not documentary (Fontanetta, 73 AD3d at 83-85). If the documentary evidence disproves an essential allegation of the complaint, dismissal is warranted even if the allegations, standing alone, could withstand a motion to dismiss for failure to state a cause of action (Snyder v Voris, Martini & Moore, LLC, 52 AD3d 811 [2d Dept 2008]; Peter F. Gaito Architecture, LLC v Simone Dev. Corp., 46 AD3d 530 [2d Dept 2007]).
Furthermore, the legal standards to be applied in evaluating a motion to dismiss pursuant to CPLR 3211(a)(7) are well-settled. In determining whether a complaint is sufficient to withstand a motion to dismiss pursuant to CPLR 3211(a)(7), " 'the sole criterion is whether the pleading states a cause of action, and if from its four corners factual allegations are discerned which taken together manifest any cause of action cognizable at law[,] a motion for dismissal will fail' " (298 Humboldt, LLC v Torres, 197 AD3d 1081, 1083 [2d Dept 2021], quoting Guggenheimer v Ginzburg, 43 NY2d 268, 275 [1977]; see Leon, 84 NY2d 83). "The complaint must be construed liberally, the factual allegations deemed to be true, and the nonmoving party granted the benefit of every possible favorable inference" (298 Humboldt, LLC, 197 AD3d at 1083; see Leader v Steinway, Inc., 180 AD3d 886 [2d Dept 2020]).[FN2]

The EDTPA was enacted on April 3, 2020 in response to the COVID-19 pandemic, and it was retroactively applied to March 7, 2020 (see NY Public Health Law Article 30-D, §§ 3080-3082). The stated purpose of the statute was to "broadly protect[ ] the health care facilities and health care professionals in this state from liability that may result from treatment of individuals with COVID-19 under conditions resulting from circumstances associated with the public health emergency" (see NY Public Health Law § 3080). The EDTPA confers broad immunity upon providers who rendered "health care services" during the COVID-19 pandemic. Specifically, [*4]Section 3082(1) of the EDTPA provides:
[A]ny health care facility or health care professional shall have immunity from any liability, civil or criminal, for any harm or damages alleged to have been sustained as a result of an act or omission in the course of arranging for or providing health care services, if:
(a) the health care facility or health care professional is arranging for or providing health care services pursuant to a COVID-19 emergency rule or otherwise in accordance with applicable law;
(b) the act or omission occurs in the course of arranging for or providing health care services and the treatment of the individual is impacted by the health care facility's or health care professional's decisions or activities in response to or as a result of the COVID-19 outbreak and in support of the state's directives; and
(c) the health care facility or health care professional is arranging for or providing health care services in good faith.
Additionally, Section 3081(5) defines "health care services" as the following:
[S]ervices provided by a health care facility or a health care professional, regardless of the location where those services are provided, that relate to:
(a) the diagnosis, prevention, or treatment of COVID-19;
(b) the assessment or care of an individual with a confirmed or suspected case of COVID-19; or
(c) the care of any other individual who presents at a health care facility or to a health care professional during the period of the COVID-19 emergency declaration.
Accordingly, the EDTPA applies where: (1) the defendant is a "health care professional" or "facility"; (2) the defendant was arranging for or providing "health care services"; (3) the services were provided in accordance with law or a COVID-19 emergency rule; (4) the services were impacted by the defendant's response to COVID-19; and (5) the services were rendered in good faith and did not amount to gross negligence or recklessness.[FN3]

The Court agrees with defendant that all five of these criteria have been met, and determines that dismissal of the Amended Complaint's first, third, fifth and sixth causes of action is warranted in connection with the EDTPA. First, the EDTPA defines "health care facility" to include "a hospital, nursing home or other facility licensed or authorized to provide health care services" (see NY Public Health Law § 3081[3]), such that defendant, which owned and operated a nursing home in Dobbs Ferry, is a "health care facility" as contemplated by the EDTPA. Second, because the EDTPA broadly applies to "arranging for" or providing services that "relate to", inter alia, "the diagnosis, prevention, or treatment of COVID-19" (see NY Public Health Law § 3081[5]), defendant in its operation of the nursing home and its conduct in seeking to prevent and treat COVID-19 was arranging for or providing "health care services" in connection with the EDTPA. With respect to the related third and fourth factors, both plaintiff's allegations in her Amended Complaint and defendant's submissions on this motion demonstrate that defendant was providing services to patients, including the decedent, in accordance with law [*5]as a licensed nursing home, and that such services were impacted by defendant's response to the COVID-19 pandemic. Fifth and finally, the Amended Complaint does not include any allegation that defendant failed to render its services in good faith, and defendant has furnished the Burke Affirmation, in which Burke avers that defendant rendered its services at the nursing home in good faith [FN4]
(see NYSCEF Doc. No. 3 at ¶¶ 1-301; NYSCEF Doc. No. 26 at ¶ 43).
The Court does not agree with plaintiff's assertion that the EDTPA, which was repealed on April 30, 2021 pursuant to NY Public Health Law Article 30-D (the "Repeal Act"), was repealed retroactively such that the Repeal Act fatally undermines the EDTPA's application to this lawsuit. Rather, each of the Appellate Division's four judicial departments have expressly held that the EDTPA was not retroactively repealed, which appellate authority wholly undercuts plaintiff's argument to the contrary. First, in Ruth v Elderwood At Amherst, 209 AD3d 1281, 1283 (4th Dept 2022), the "Supreme Court [had] determined that the repeal of EDTPA did not apply retroactively and that the immunity conferred by EDTPA warranted dismissal of the complaint." In affirming the Supreme Court's holding, the Appellate Division in Ruth stated: "Plaintiff nonetheless asserts that, even though the text of the repeal legislation does not expressly provide for retroactive application, the presumption against retroactivity is overcome because the legislative history and the nature and circumstances of the legislation provide a clear expression of the legislature's intent for the repeal to apply retroactively. We reject that assertion as well" (Ruth, 209 AD3d at 1287 [emphasis added]). In further emphasizing that "nothing in the text expressly or by necessary implication requires retroactive application of the repeal," the Court in Ruth held that there was no merit to the plaintiff's contention that the Repeal Act's legislative history demonstrated "retroactive intent"; and as such the Appellate Division affirmed the Supreme Court's determination that the EDTPA was not retroactively repealed, stating: "we conclude that the repeal of EDTPA does not apply retroactively" (id. at 1287-1292).
Similarly, in Whitehead v Pine Haven Operating LLC, 222 AD3d 104, 107-108 (3d Dept 2023), the Appellate Division's Third Department held that the Repeal Act was not meant to retroactively repeal the EDTPA. In particular, the Court in Whitehead noted that "[w]hen the Legislature initially enacted the EDTPA on April 3, 2020, it expressed plainly its intent that the legislation be applied retroactively, stating that the EDTPA would 'take effect immediately and would be deemed to have been in full force and effect on or after March 7, 2020'" (Whitehead, 222 AD3d at 107). By contrast, the Court emphasized that "however . . . the ultimate repeal of the EDTPA contained no express indicator of retroactivity — rather, the Legislature simply stated that the repeal would 'take effect immediately'" (id. at 107-108). As such, in further stating that "[a]s for the legislative history of the repeal, the sponsoring memoranda do not directly address the issue of retroactivity," the Appellate Division in Whitehead held that "[o]n balance, the legislative history of the repeal weighs against its retroactive application" (id. at 108). It concluded: "[b]ased upon all of the foregoing, and noting that the retroactive application of the [*6]repeal of the EDTPA would merely punish healthcare providers for past conduct they cannot change — an objective that has been deemed illegitimate as a justification for retroactivity — we hold that the repeal of the EDTPA was not retroactive" (id. at 109) (internal quotations and citations omitted).
Thereafter, in Hasan v Terrace Acquisitions II, LLC, 224 AD3d 475, 476-478 (1st Dept 2024), the Appellate Division's First Department reached the same conclusion as in Ruth and Whitehead, holding that "[p]laintiff argues that the repeal of the EDTPA was retroactive, and therefore, that defendant is not shielded from liability for actions that occurred while the EDTPA was still in effect. We disagree." Most recently, the Appellate Division, Second Department expressly agreed with the other three judicial departments. In Damon v Clove Lakes Healthcare & Rehabilitation Ctr., Inc., 228 AD3d 618 (2d Dept 2024), the Court held that "contrary to the plaintiff's contention, the Supreme Court properly determined that the repeal of the EDTPA did not apply retroactively" (id. at 619).
Therefore, the Court does not credit plaintiff's assertion that the EDTPA was repealed retroactively in the Repeal Act; and as such the immunity from civil liability set forth in the EDTPA requires the dismissal of the Amended Complaint's first, third, fifth and sixth causes of action pursuant to CPLR 3211.[FN5]

With respect to the seventh cause of action, the Court agrees with defendant that the EDTPA's exception for "gross negligence, reckless misconduct, or intentional infliction of harm" (see NY Public Health Law § 3082[2]) is inapplicable herein. In particular, the Court credits defendant's assertion that the seventh cause of action fails to allege sufficient facts to support any finding of intentional, willful, or grossly negligent conduct (see NYSCEF Doc. No. 3 at ¶¶ 271-279), and agrees that the allegations underlying this claim are very similar to the allegations set forth in a cause of action for gross negligence in Whitehead, 222 AD3d at 107-108 (see NYSCEF Doc. No. 58 at ¶¶ 302-310). In Whitehead, the Appellate Division found that this gross negligence claim was subject to dismissal pursuant to CPLR 3211, holding that "with specific respect to plaintiff's cause of action for gross negligence — a statutory carveout to EDTPA immunity — this claim consists of nothing more than 'bare legal conclusions with no factual specificity, which do not suffice to withstand a motion to dismiss'" (222 AD3d at 110-111, quoting Mid-Hudson Val. Fed. Credit Union v Quartararo & Lois, PLLC, 155 AD3d 1218, 1219 [3d Dept 2017], aff'd 31 NY3d 1090 [2018]; accord Bologna v Carmel Richmond Nursing Home, Inc., 2024 NY Misc. LEXIS 1860, *43 [Sup. Ct. Kings Cty. Apr. 25, 2024] (dismissing a claim for gross negligence where such cause of action "consists of nothing more than bare legal conclusions with no factual specificity, which do not suffice to withstand a motion to dismiss")). Therefore, as plaintiff's gross negligence claim herein similarly lacks factual specificity, the branch of defendant's motion seeking dismissal of the seventh cause of action is granted pursuant to CPLR 3211.
The eighth cause of action for nursing home malpractice is also subject to dismissal in connection with the EDTPA to the extent that it arises from claims of defendant's malpractice [*7]during the onset of the COVID-19 pandemic in the Winter of 2020 (see Bologna, 2024 NY Misc. LEXIS 1860 at *43 [in a lawsuit alleging, inter alia, nursing home malpractice, holding that "defendants were entitled to the immunity from liability conferred by EDTPA"]; Est. of Margarechko v Sprain Brook Manor Rehab., LLC, 2024 NY Misc. LEXIS 3120, *8 [Sup. Ct. Westchester Cty. Feb. 2, 2024] (stating that "[t]he branch of the motion seeking dismissal of the . . . Eighth (nursing home malpractice and professional negligence) causes of action on the ground that those claims are barred by the EDTPA thus is granted")). However, this claim makes clear that it does not solely pertain to defendant's alleged malpractice in early 2020. Rather, it unambiguously states that it arises from defendant's alleged misconduct "from on or about 2017, to and through April 4, 2020," reflecting the time period from the commencement of decedent's residency at defendant's nursing home on January 1, 2017 through her transfer to White Plains Hospital on April 4, 2020 (see NYSCEF Doc. No. 3 at ¶¶ 280-301). As such, this claim relates both to the pre-COVID pandemic time period of 2017 through early 2020 to which the EDTPA does not apply, and to the Winter of 2020 for which this statute is applicable and provides defendant with immunity. Accordingly, the eighth cause of action is dismissed pursuant to CPLR 3211 to the extent that this claim alleges nursing home malpractice after the COVID-19 pandemic began and the EDTPA was retroactively enacted on March 7, 2020. Defendant's motion is denied, however, concerning the balance of the eighth cause of action that alleges nursing home malpractice in connection with defendant's care of the decedent between 2017 and March 6, 2020.
Similarly, the second cause of action, which solely alleges defendant's negligence prior to the onset of the COVID-19 pandemic in the Winter of 2020, is not encompassed by the EDTPA or the PREP Act. Indeed, the second cause of action unambiguously states that this claim involves allegations of "Negligence Pre-COVID Pandemic," and the 16 paragraphs comprising this cause of action repeatedly make clear that defendant's alleged negligence occurred "prior to the beginning of the COVID-19 pandemic in February/March 2020" (see NYSCEF Doc. No. 3 at ¶¶ 207-222). As such, this claim involves alleged negligence by defendant that pre-dates the time period covered by the EDTPA and the PREP Act, and implicitly may date as far back as January 1, 2017 when the decedent became a resident of defendant's nursing home. Therefore, the branch of defendant's motion seeking dismissal of the second cause of action pursuant to CPLR 3211 is denied.[FN6]

Regarding the branch of defendant's motion seeking to dismiss the fourth cause of action for negligence per se pursuant to CPLR 3211(a)(7) on the ground that plaintiff failed to state a claim, plaintiff's submissions in opposition are silent with respect to this claim (see NYSCEF Doc. Nos. 72-73). As such, the Court agrees with defendant that plaintiff has tacitly abandoned her claim for negligence per se and conceded its dismissal (see generally Wells Fargo Bank, N.A. v Carrington, 221 AD3d 746, 749 [2d Dept 2023] (holding that "the Supreme Court property granted those branches of the plaintiff's motion which were to strike his affirmative [*8]defenses . . . and the counterclaim . . . since the defendant abandoned those affirmative defenses and that counterclaim by failing to address them in opposition to the plaintiff's motion"); Genovese v Gambino, 309 AD2d 832, 833 [2d Dept 2003] (finding that the Supreme Court should have dismissed a cause of action where the plaintiff "did not oppose that branch of the motion" such that "he has abandoned his claim")). Accordingly, the branch of defendant's motion seeking dismissal of the fourth cause of action is granted pursuant to CPLR 3211(a)(7).
All other arguments raised on this motion and all evidence submitted by the parties in connection therewith have been considered by the Court, notwithstanding the specific absence of reference thereto. Based on the foregoing, it is hereby:
ORDERED that the motion by defendant is granted to the extent that the Amended Complaint's first, third, fourth, fifth, sixth and seventh causes of action are hereby dismissed pursuant to CPLR 3211; and it is further
ORDERED that defendant's motion is denied with respect to the Amended Complaint's second cause of action; and it is further
ORDERED that defendant's motion is denied to the extent that the Amended Complaint's eighth cause of action alleges nursing home malpractice prior to the onset of the COVID-19 pandemic on March 7, 2020, but is otherwise granted with respect to the balance of the eighth cause of action, which is hereby dismissed pursuant to CPLR 3211; and it is further
ORDERED that the parties to this action shall appear for a preliminary conference on a date and time as set by the clerk. 
E N T E R,
Dated: August 13, 2024
White Plains, New York
HON. JOAN B. LEFKOWITZ, J.S.C.

Footnotes

Footnote 1:Plaintiff's submissions in opposition are silent with respect to the fourth cause of action for negligence per se (see NYSCEF Doc. Nos. 72-73).

Footnote 2:To the extent that defendant's motion is made pursuant to CPLR 3211(a)(2), that provision states that "[a] party may move for judgment dismissing one or more causes of action asserted against him on the ground that . . . the court has not jurisdiction of the subject matter of the cause of action."

Footnote 3:As discussed below, the only exception under the EDTPA is for injuries caused by "willful or intentional misconduct, gross negligence, reckless misconduct, or intentional infliction of harm" (see NY Public Health Law § 3082[2]).

Footnote 4:The Court does not credit plaintiff's assertion that the Burke affirmation is insufficient. Her affirmation is based upon Burke's personal knowledge as defendant's Administrator during the entirety of the decedent's residency in defendant's nursing home, and she avers in 44 detailed paragraphs as to defendant's good faith furnishing of services to the decedent and defendant's good faith reliance upon the government's guidance regarding the COVID-19 pandemic (see NYSCEF Doc. No. 26 at ¶¶ 1-44).

Footnote 5:Contrary to plaintiff's contention, a CPLR 3211 motion to dismiss is indeed the appropriate legal vehicle by which to invoke EDTPA immunity. Indeed, in Ruth, 209 AD3d at 1287-1292, Whitehead, 222 AD3d at 107-108, and Hasan, 224 AD3d at 476-478, the respective plaintiffs' complaints were dismissed at the pre-answer stage pursuant to the EDTPA.

Footnote 6:In light of the Court's holding, it need not address defendant's alternative and secondary argument that the claims being dismissed herein pursuant to the EDTPA are also barred by the PREP Act. However, the Court notes that the Amended Complaint's first, third, fifth, sixth, and seventh causes of action, and the post-pandemic portion of the eighth cause of action, appear to be similarly subject to dismissal under the PREP Act.